UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BRAIN CURTIS,                                                    Case No. 23-2982

                              Plaintiff,                **COMPLAINT**

                v.                              **JURY DEMAND**

VILLAGE OF ROCKVILLE CENTRE, MAYOR
FRANCIS X. MURRAY, ADMINISTRATOR
NANCY HOWARD, and WENDY WEINSTOCK,

                              Defendants.

-----------------------------------------------------------------X

       Plaintiff, by his attorneys, alleges as follows:

## INTRODUCTION

       1.     Plaintiff Brian Curtis is a Black man who is employed by the Defendant Village of Rockville Centre as a line supervisor of employee electricians who maintain electric utilities for the municipality. He is the only Black person who works out of the building where he is assigned and one of few Black employees of the defendant municipality. Because of his race, Mr. Curtis has been the target of ongoing discrimination, harassment, and retaliation, and is treated differently and less well than other employees. The head of human resources subjected him, in quick succession, to investigations for more than thirteen "infractions" after a career with a spotless discipline record. The pervasive nature of the misconduct has been humiliating to Mr. Curtis, and altered Mr. Curtis's work environment for the worse.

## PARTIES

2. Plaintiff Brian Curtis is a 54-year-old Black man and is a resident of Nassau County. He is and has been at all relevant times an employee of Defendant Village of Rockville Centre.

3. Defendant Village of Rockville Centre ("Rockville") is a municipality located in the County of Nassau. Defendant Rockville is and at all relevant times was Plaintiff's employer.

4. Defendant Francis X. Murray is and at all relevant times was mayor of Defendant Rockville.

5. Defendant Nancy Howard is and at all relevant times was Administrator of Defendant Rockville.

6. Defendant Wendy Weinstock is and at all relevant times was Defendant Rockville's Equal Employment Officer.

## JURISDICTION

7. Jurisdiction over Plaintiff's claims is conferred upon this Court by 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

8. Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391(b), because Defendant Rockville is located in the Eastern District of New York, and the allegations of the Complaint occurred therein.

## STATEMENT OF FACTS

9. Plaintiff is an employee of Defendant Rockville where he has worked since in or about November 2011, when he was hired as a Line Maintainer First Class by Defendant Rockville in its Electrical Department.

10. He is the only Black person employed by Defendant Rockville who works out of the building where he is assigned, and as such he is a minority.

11. Plaintiff was promoted to Line Supervisor in or about June 2017.

12. When he was promoted to supervisor, he immediately became the target of a vicious smear campaign and repeated efforts to undermine him and have him fired because he is Black.

13. Immediately after his promotion, Defendant Rockville entertained a complaint from a coworker alleging, without evidence, that he was not qualified for the position he held.

14. Presumably, Defendant Rockville reviewed his credentials before offering him the job as line supervisor. Nevertheless, Defendant Rockville investigated the claim, which investigation revealed that he was the most qualified employee for the promotion. This should not have been in question, as he is a 35kv certified high voltage journeyman with 25 years' experience who has managed crews during storms and in any number of other circumstances.

15. Plaintiff reported the discriminatory investigation to Defendant Weinstock acting in her official capacity. Defendant Weinstock claimed the investigation occurred because Plaintiff is a civil service employee and failed to disclose an arrest almost two decades ago.

16. Defendant Rockville and Defendant Weinstock subsequently claimed that they had no role in the investigation of Plaintiff's promotion application and did not initiate it. Plaintiff knows this claim to be pretextual because he personally, physically provided a certificate of disposition regarding that arrest early in the application process to the Nassau County Civil Service Commission.

17. Starting in November 2020, Defendant Village and Defendant Weinstock commenced a campaign of repeated spurious investigations against Plaintiff, because he is a Black man in a supervisory role and non-Black employees are resentful.

18. In quick succession, Plaintiff was investigated for:

(i) stealing time (which he did not).

(ii) abusing overtime (he was the sole employee who worked consistently throughout the pandemic and still did not have substantially more overtime than his peers).

(iii) using Defendant Rockville's vehicle outside of work without permission (the superintendent authorized any outside use).

(iv) not being present at jobsites (logs proved he was).

(v) not working when he was on jobsites (after he disproved the allegations that he was not there at all).

(vi) using overtime paid by Defendant Rockville to compensate a coworker for outside employment (he did not).

(vii) being under the influence at work two weeks in a row (he does not drink or use drugs and these allegations were baseless).

(viii) harassing a coworker by parking outside his house (when Plaintiff was at a distant jobsite) and deriding the coworker with expletives (a lie).

(ix) "driving past" the same coworker's house (the coworker lives in Defendant Rockville on a route Plaintiff must take on occasion while working).

(x) both micromanaging his direct reports <u>and</u> being too "standoffish" with them.

(xi) working out of uniform (untrue).

(xii) cursing at a subordinate (he did not).

    (xiii) working unsafely, which included

    (a) instructing his team to work unsafely on a project (false; he was not supervising the project—there were two other supervisors),

    (b) instructing two employees to share a bucket truck (a claim that is entirely fabricated),

    (c) violating a procedure for reenergizing a transformer (there was no procedure in place), and

    (d) arriving late to address a power outage (he was not even notified of the outage until almost an hour after it occurred, and he then moved to address it as soon as he was able).

  19. No other non-Black employee has been subjected to similar repeated, unsubstantiated investigations.

  20. Shockingly, but not surprisingly, and in violation of civil service law, these allegations were made orally and not in writing, and when Plaintiff asked for a written summary of charges against him, Defendant Weinstock refused, claiming the only written record was her notes and they were confidential.

  21. Perhaps most appalling is that Defendant Rockville commenced official action <u>against</u> Plaintiff because he reported and opposed the discriminatory conduct.

  22. Defendant Murray, Defendant Howard, and Defendant Weinstock suspended Plaintiff from his position as supervisor pending "investigation" of the "charges" of "unsafe work" that Defendant Weinstock vaguely mentioned but refused to reduce to writing.

  23. Plaintiff was suspended at the beginning of August 2021.

24. Despite the claims of unsafe work, Defendant Rockville's safety coordinator was not notified of the specific charges, did not investigate the charges, and did not interview Plaintiff or any other witnesses.

25. Defendants did not conclude their investigation until November 2021, because according to Defendant Weinstock, the investigation was delayed by witnesses' work and vacation schedules.

26. Defendant Weinstock's approach reflects how cavalierly she is willing to treat Plaintiff's career and livelihood.

27. This attitude is not new. Defendant Weinstock advised a coworker making complaints about Plaintiff that his claims "would not stand up in court" and he would "have to find something else" against Plaintiff for Plaintiff to be terminated.

28. In stark contrast, Defendant Weinstock has instructed Plaintiff that it is his responsibility to stop the discrimination and harassment by changing his "approach" toward other employees and altering his "tone."

29. In addition to these aggressive incidents of discrimination, during his employment with Defendant Rockville, Plaintiff has been told coworkers "don't like" him, "don't trust" him, and "don't feel comfortable working with" him. He was also told that coworkers discussed a plan to get Plaintiff fired, not for poor performance, but by "sticking together" against Plaintiff. As part of this scheme, and an example of the discrimination against Plaintiff because he is Black, the linemen who report to Plaintiff purposely ignored him and reported their time to a white supervisor (who is not their direct supervisor), because they do not want to be told what to do by a Black man.

30. Recently, Plaintiff became aware that a subordinate, Chester, in an effort to undermine Plaintiff, reported to Plaintiff's managers each time Plaintiff corrected him or disciplined him.

31. Chester, who is responsible for helping with timesheets, has singled out Plaintiff's timesheets for "verification" and is scrutinizing Plaintiff's time, which is not part of Chester's job function.

32. Employees from Plaintiff's Department and other Departments have approached Plaintiff and questioned him about these claimed irregularities in his timecard.

33. Plaintiff has reported Chester's harassing conduct to his supervisors no less than three times, but, to date, Defendants have not taken steps to put a stop to it.

34. As a result of the foregoing, Plaintiff has suffered humiliation and extreme emotional distress.

## AS AND FOR A FIRST CAUSE OF ACTION

35. By acting aforedescribed, Defendants have violated Plaintiff's rights under 42 U.S.C. § 1981 because he is a Black man by providing him with terms and conditions of employment different from those of similar employees, retaliating against him, and harassing him and/or creating and/or allowing to exist a hostile work environment based upon his race.

## AS AND FOR A SECOND CAUSE OF ACTION

36. Defendants, by acting as aforedescribed, have violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, providing him with terms and conditions of employment different from those of similar employees, retaliating against him when he complained about discriminatory treatment, and harassing him and/or creating and/or allowing to exist a hostile work environment based upon his race. Plaintiff brought a charge of

discrimination with the Equal Employment Opportunity Commission, which issued a Notice-of-Right-to-Sue letter which was received by Plaintiff on or about January 26, 2023.

## AS AND FOR A THIRD CAUSE OF ACTION

37. By acting in the aforedescribed manner, Defendants at all times relevant to this action were acting under color of state law and deprived the plaintiff of his legitimate and certain property interests the plaintiff had a claim of entitlement to through the following violations of 42 U.S.C. § 1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

38. By acting in the aforedescribed manner, Defendants violated Plaintiff's rights under the New York State Human Rights Law.

39. As to the individual Defendants, they acted in their official capacities and aided and abetted in the harassment, discrimination, and retaliation against Plaintiff.

## JURY DEMAND

Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff prays that this Court enter judgment:

a. Directing that the discriminatory investigations against Plaintiff cease;

b. Awarding Plaintiff compensatory damages in amount to be determined at trial, but in no event less than $500,000; and

c. Awarding Plaintiff costs, attorney's fees, and such other relief as just and equitable.

Dated: New York, New York
April 20, 2023

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
Attorneys for Plaintiff

By: /s/ *Laine Alida Armstrong*
Laine Alida Armstrong
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com